UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY SCOTT, on behalf of
Robert Norris, Deceased,

                              Plaintiff,

                                                              DECISION AND ORDER

                                                                             07-CV-6561L

                              v.

JO ANNE B. BARNHART,[1]
Commissioner of Social Security,

                              Defendant.
_____

## INTRODUCTION

Mary Scott, on behalf of Robert Norris, deceased ("plaintiff"),[2] brings this action under 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that plaintiff is not disabled under the Social Security Act, and therefore, is not entitled to Social Security disability benefits. This case is most troubling. Several Administrative Law Judges ("ALJs") ruled that plaintiff was not entitled to benefits and on three different occasions, on review, a district court remanded for further proceedings because of defects in the Administrative Hearing. Now, I must do the same in a case that has been prosecuted for over a decade.

---

[1] Plaintiff's complaint names former Commissioner of Social Security Joanne B. Barnhart as the defendant. Michael J. Astrue, the current Commissioner, automatically is substituted as the defendant pursuant to Fed. R. Civ. P. 25(d)(1).

[2] Plaintiff Robert Norris passed away during the course of the proceedings in this matter. His daughter is now the named plaintiff, on his behalf. (Tr. 535).

Plaintiff originally applied for Social Security disability insurance benefits on February 27, 1996.[3] Plaintiff identified a disability onset date of April 3, 1980, due to, *inter alia*, hypertension, cardiac difficulties, uncontrolled diabetes and edema (Tr. 52). Plaintiff's application was initially denied. (Tr. 46-48, 53-55). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on October 7, 1997 before ALJ Verner R. Love. (Tr. 25-45). ALJ Love determined that plaintiff was not disabled under the Act (Tr. 10-17). Plaintiff appealed to this Court, and the parties stipulated to a remand pursuant to sentence four of 42 U.S.C. §405(g). (Tr. 4-5, 396-98) (Case No. 00-CV-6119, Telesca, J.).

Upon remand, a second hearing was held on January 16, 2002 by ALJ John P. Costello. (Tr. 309-380). ALJ Costello issued a determination on March 19, 2002, finding plaintiff not disabled. (Tr. 292-305, 606-16). Plaintiff appealed to the district court and the matter was again remanded by stipulation and order filed January 17, 2003 pursuant to sentence four of 42 U.S.C. §405(g). (Tr. 627-629) (Case no. 02-CV-6293, Siragusa, J.).

A third hearing was held by ALJ John P. Costello on May 24, 2004. (Tr. 652-75). On September 23, 2004, ALJ Costello issued a decision finding that, based upon vocational expert testimony adduced at the hearing, plaintiff could perform a significant number of jobs in the national economy, including order clerk, and addresser and cutter/paster. However, the vocational expert's testimony related to the availability of such jobs in 2003. (Tr. 591-605, 755-766).

Plaintiff appealed to the district court once again, and on September 1, 2005, the parties stipulated for a third time to remand the case pursuant to sentence four of 42 U.S.C. §405(g). (Tr. 775, 779, 785-87) (Case no. 04-CV-6595, Siragusa, J.) The court order specified that on remand, the ALJ was to develop the record with respect to the incidence of the jobs plaintiff could perform prior to his date last insured, December 31, 1986. (Tr.786). The Appeals Council order remanding

---

[3] "Tr." refers to the transcript of the administrative record.

the matter to an ALJ further required that the ALJ consider whether plaintiff is a class member in the matter of *Dixon v. Shalala*, 54 F.3d 1019 (2d Cir. 1995). (Tr. 782-784).

Hearings were held on February 8, 2007 and May 14, 2007 by ALJ James E. Dombeck, to obtain vocational evidence concerning the incidence of the order clerk and addresser and cutter/paster positions between the alleged onset date of April 3, 1980 and the date last insured, December 31, 1986. (Tr. 867-947). On September 12, 2007, ALJ Dombeck determined that during the period in issue, plaintiff was capable of returning to his past relevant work as a "farm manager," and/or making an adjustment to other work that existed in significant numbers in the national economy, and was therefore not disabled. (Tr. 751A-O).

This action followed. The Commissioner has moved (Dkt. #5) and the plaintiff has cross-moved (Dkt. #8) for judgment on the pleadings. As discussed below, the Commissioner's decision is reversed, and the matter is remanded for further proceedings.

## FACTUAL BACKGROUND

Plaintiff has a high school education, and was forty years old on his last day of work. His past relevant work included employment as a truck driver for Xerox from 1965 until 1980, and as a fruit farmer from 1973 through February 1996 (Tr. 57, 190).

Plaintiff ceased truck driving in 1980 due to a nervous breakdown and depression, for which he was treated sporadically from 1980 to 1984. (Tr. 35, 36). At his 1997 hearing, plaintiff testified that he has suffered from uncontrolled diabetes since 1982, with blood sugar fluctuations that require him to lie down two or three times a day. (Tr. 29-30). Since 1983, he has noted numbness in his legs, and severe numbness and swelling in his feet. (Tr. 41). Plaintiff also suffers from heart problems, and underwent coronary artery bypass surgery in 1991 with a subsequent blockage in 1992. (Tr. 39). The resulting fatigue makes it difficult for him to walk more than short distances, and he suffers from coughing spells and chest pains when nervous or stressed. (Tr. 39-40).

As a fruit farmer, plaintiff managed his farm, drove equipment, ran sprayers, used tools, and supervised between two and ten people. (Tr. 58). He sat for two hours per day, stood for four hours,

and walked for one hour, with frequent lifting and carrying of up to fifty pounds, and occasional bending. (Tr. 43). In his spare time, plaintiff maintained the orchards that occupied 20 acres of his 60-acre farm, trimming and planting trees, plowing and dusting. (Tr. 30-32).

According to plaintiff's son, daughter, and ex-wife, each of whom testified at the 2007 hearing, plaintiff functioned primarily in a supervisory capacity, directing and relying upon the work of hired employees and family members who worked on the farm, and did little or no physical work himself. (Tr. 333-338, 870-877, 883, 922, 931-32). Plaintiff complained of fatigue, chest pains and shortness of breath, suffered frequent coughing spells, and was unable to walk more than short distances. (Tr. 340, 874). He had difficulty dealing with stress and was reluctant to leave the house. (Tr. 931). At or about the time he quit his truck driving position with Xerox, plaintiff became notably depressed by his physical limitations, and remained so until his death. (Tr. 340-342). By all accounts, the farm was not profitable, and usually lost money from year to year. (Tr. 888, 927).

During the relevant time period, plaintiff was treated by several different physicians. On August 22, 1980, a Dr. Seal completed a medical report for the Department of Social Services, noting that he had treated plaintiff on a monthly basis since February 1972. He diagnosed plaintiff with moderately severe hypertension, instability, gout, fatigue, obesity, and bouts of headache, nervousness, dizziness and nausea. (Tr. 710). Treatment notes throughout 1981 continued to note anxiety attacks, headaches, depression, dizziness, hypertension and fatigue. (Tr. 278-285). At the request of the Bureau of Disability Determinations, examining physician Dr. Anthony V. Ferrari saw plaintiff on February 18, 1981. Dr. Ferrari diagnosed plaintiff with severe hypertension, significant psychiatric disease, diabetes mellitus and gout. (Tr. 732).

On March 5, 1981, treating psychiatrist Dr. John McIntyre completed a psychiatric RFC form for plaintiff, which identified mild and moderate limitations with respect to all work functions, and "severe" limitations with respect to work requiring frequent contact with others, and ability to meet production, quality and attendance standards. (Tr. 734-737).

No medical records are available for 1982 or 1983. In March 1984, plaintiff was admitted to the Meyers Community Hospital for a sudden onset of chest pain. His blood pressure was stabilized and he was discharged ten days later. (Tr. 214). From 1984 through 1987, plaintiff treated regularly with several physicians, who repeatedly noted the plaintiff's diagnoses of obesity, unstable angina, uncontrolled diabetes and edema. (Tr. 214-275). Although plaintiff's treating general practitioner, Dr. Ghertner, recommended a cardiac catheterization in February 1987, plaintiff refused it, denying cardiac symptoms. (Tr. 267). No further medical records are available until February 26, 1991, when plaintiff did undergo a cardiac catheterization. During surgery, multiple areas of significant plaque stenosis (narrowing of the arterial vessels) were identified, with some arterial vessels up to 90 to 95% stenosed. (Tr. 97-99). An admission note by treating cardiologist Dr. Gacioch noted that plaintiff has had hypertension since the mid-1970s, controlled at fluctuating levels due to changes in plaintiff's weight. Plaintiff described chest pains, relieved by nitroglycerin. An exercise stress test was terminated after six minutes due to chest tightness and shortness of breath. Plaintiff was ordered to be admitted for coronary bypass surgery. (Tr. 157).

On March 21, 1991, plaintiff underwent a quadruple bypass surgery. (Tr. 127-128). On March 31, 1991, he was referred to the Sodus Emergency Department where he was found to be in mild congestive heart failure. He was treated with Lasix, and by April 1, 1991, was found to be free of symptoms. (Tr. 156). Subsequent reports reflect that plaintiff had little or no edema, and no significant cardiac complaints, for almost a year. (Tr. 152-54).

On July 31, 1992, plaintiff was hospitalized with unstable angina. (Tr. 93). He underwent cardiac catheterization revealing total occlusion (blockage) of both saphenous vein grafts (the grafts used for plaintiff's bypass surgery), along with severe coronary artery disease and left ventricular dysfunction and graft disease. (Tr. 149). On August 27, 1992, plaintiff was seen by Dr. Gacioch, who felt that coronary bypass grafting was the last treatment option for plaintiff. (Tr. 133). On October 20, 1992, plaintiff was admitted to Rochester General Hospital for a percutaneous

transluminal coronary angioplasty (using a needle to implant and inflate balloons in blocked arteries, to reduce the blockage). The surgery was only marginally successful. (Tr. 87).

From 1993 through the date of his death in 2001 from coronary artery disease, related to diabetes mellitus (Tr. 534), plaintiff's medical records consistently note obesity, edema in the lower extremities, diabetes, hypertension, coronary artery disease, gout, asthma, excessive alcohol consumption, fatigue, coughing spells, shortness of breath, depression and anxiety. (Tr. 129-30, 201-208, 224, 239, 431-450, 470-85, 495).

On March 29, 1996, April 9, 1996, and October 14, 1997, treating cardiologist Dr. Gacioch completed RFC reports for plaintiff, consistently indicating that plaintiff could lift 11-20 pounds at a time and less than 10 pounds frequently. Plaintiff needed to alternate between sitting and standing positions, could stand and walk for no more than two hours per day and ten minutes at a time, and could only rarely climb, balance, stoop, crouch, kneel, crawl, bend, climb stairs, reach, push or pull. Plaintiff also had environmental restrictions with respect to heights, moving machinery, temperature extremes and humidity. It was Dr. Gacioch's opinion that plaintiff's medical problems, including obesity, hypertension, diabetes, and coronary artery disease, met the Guideline Listing §4.04(C),[4] and that plaintiff had been disabled since at least 1985. (Tr. 181-184, 253-254, 262-263).

On July 5, 1996, treating physician Dr. Stark-McLean diagnosed plaintiff with diabetes, hypertension coronary artery disease with exertional angina, high cholesterol, gout, allergic rhinitis, alcohol use and depression. Dr. Stark-McLean found that plaintiff is limited to lifting and carrying ten pounds, can stand or walk less than two hours a day and sit less than sit hours a day, and could

---

[4] Listing §4.04(C) refers to: "[i]schemic heart disease, with symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment . . . with . . . [c]oronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imagine, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experience in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2: (1) Angiographic evidence showing . . . [various levels of arterial or vascular narrowing] and (2) [r]esulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living." 20 C.F.R. §404, Subpt. P, App. 2.

do only limited pushing and pulling, as significant upper extremity movement would likely trigger angina. (Tr. 185-188).

Plaintiff's treating general practitioner, Dr. Ghertner, completed an RFC report on September 30, 1997. He opined that plaintiff has been disabled since January 6, 1986, retaining the ability to only "occasionally" engage in the activities of climbing, balancing, stooping, crouching, kneeling, crawling, bending, climbing stairs, reaching, pushing and pulling. He stated that plaintiff could stand for 2-4 hours and must alternate between sitting and standing, could walk up to fifty feet, and lift up to 20 pounds at a time. (Tr. 587-590).

Finally, examining physician Dr. Schorr performed an independent psychological evaluation of plaintiff on September 22, 2000 and completed a mental RFC report. Dr. Schorr found that plaintiff was generally able to tolerate the requirements and pressures of a work setting, but noted that if placed under the stress of a job, plaintiff's condition would likely deteriorate. After reviewing plaintiff's psychiatric treatment records for 1980 and 1981, Dr. Schorr opined that plaintiff's degree of disability had intensified over the years. (Tr. 419-423).

At Judge Costello's 2004 hearing, vocational expert Peter Manzi had testified that a person of plaintiff's age, education and work experience, with a capacity for a full range of sedentary work with a "light stress" limitation could perform the jobs of order clerk, and addresser or cutter paster. (Tr. 764-765). With the hypothetical modified to include a limitation on contact with the public and co-workers, Manzi testified that only the jobs of addresser/cutter paster would be suitable. (Tr. 660-661). Despite reports from plaintiff's treating physicians, Dr. Ghertner and Dr. Stark-McLean, which described plaintiff as being limited to, among other things, "occasional" pushing and pulling (Tr. 587-590), none of the vocational experts were posed a hypothetical that incorporated such limitations for the relevant time period.

A vocational expert, Julie Andrews, testified at the February 2007 hearing. She was unable to provide information concerning the jobs previously identified for the period leading up to plaintiff's last date insured, from 1980 and 1986. (Tr. 892-893). However, Manzi subsequently

provided additional vocational information to ALJ Dombeck. He reported that both the addresser and cutter paster jobs existed in the national economy in the following numbers: approximately 40,000 jobs in the national economy from 1980-1983, and 195-205 jobs in the regional economy (national statistics being unavailable) from 1983 to 1986. (Tr. 802-60, 935-47).

## DISCUSSION

### I. Standard for Determining Disability

A person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). In order to determine whether a claimant is disabled, an ALJ employs a five-step inquiry:

> The first step determines whether the claimant is engaged in 'substantial gainful activity.' If he is, benefits are denied. If he is not engaged in such activity, the process moves to the second step, which decides whether the claimant's condition or impairment is 'severe'– i.e., one that significantly limits his physical or mental ability to do basic work activities. If the impairment is not severe, benefits are denied. If the impairment is severe, the third step determines whether the claimant's impairments meet or equal those set forth in the 'Listing of Impairments'. . . contained in subpart P, appendix 1, of the regulations. . . . If the claimant's impairments are not listed, the process moves to the fourth step, which assesses the individual's 'residual functional capacity' (RFC); this assessment measures the claimant's capacity to engage in basic work activities. If the claimant's RFC permits him to perform his prior work, benefits are denied. If the claimant is not capable of doing his past work, a decision is made under the fifth and final step whether, in light of his RFC, age, education, and work experience, he has the capacity to perform other work. If he does not, benefits are awarded.

*Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986) (citations omitted). It is well-settled that plaintiff bears the burden of proof at the first four steps of the analysis. At the fifth and final stage of this process, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work that exists in the national economy. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

**II.     The ALJ's Decision**

At step one, ALJ Dombeck found that plaintiff had engaged in substantial gainful activity during the period in question, consisting of self-employment as a farmer and farm manager. At steps two and three, the ALJ adopted the findings of ALJ Costello, and concluded that plaintiff had severe impairments, consisting of heart disease, obesity, depression and anxiety, which did not meet or equal a listed impairment. At step four, the ALJ found that plaintiff could not return to his past relevant work as a truck driver or farmer, but could perform the duties of a farm manager. The ALJ adopted the RFC described by ALJ Costello, and concluded that plaintiff retained the RFC to perform the full range of sedentary work, with occasional contact with the public and co-workers, and a "fair" ability to handle stress. Notwithstanding his finding that plaintiff could return to his past work as a farm manager, the ALJ continued to step five. After considering the Medical-Vocational Guidelines and reviewing materials from a vocational expert, the ALJ concluded, based on plaintiff's age, education, and work experience, that plaintiff was not disabled because he retained the RFC to perform a significant number of jobs in the national economy between 1980 and 1986, including the positions of addresser and cutter paster. (Tr. 751-O) ALJ Dombeck further adopted the findings of prior ALJs who determined that plaintiff could also perform the jobs of order clerk, general assembler, patcher and table worker. (Tr. 751-N).

With respect to the effect of *Dixon* on plaintiff's 1980 application, the ALJ concluded that the 1980 application was not subject to reopening, and that because plaintiff's ability to work during the relevant period had been readjudicated during the processing of his 1996 application, the issue was moot.

**III.  Standards of Review**

The Commissioner's decision that plaintiff was ineligible to receive benefits must be affirmed if it applies the correct legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g); *Shaw v. Carter*, 221 F.3d 126, 131 (2d Cir. 2000); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force," a district court cannot not substitute its own judgment for that of the Commissioner. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled.").

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984); *accord Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). The Court must determine if the Commissioner's decision applied the correct legal standards in finding that plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Only after finding that the correct legal standards were applied should the Court consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). "'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'" *Schaal*, 134 F.3d at 504 (quoting *Johnson*, 817 F.2d at 986).

## IV. Plaintiff's Alleged Disability

I find that the Commissioner's decision regarding plaintiff's disability is based on legal error, is not supported by substantial evidence, and, therefore, the matter must be remanded for further proceedings. I agree with the plaintiff that the ALJ erred in adopting the findings of other ALJs in decisions that had been reversed and remanded, and in failing to follow the explicit directives of the Appeals Council. Moreover, the ALJ's finding that there were jobs in the national economy that plaintiff could perform with his limitations is not supported by substantial evidence.

A.      **Whether Plaintiff Engaged in Substantial Gainful Activity**

ALJ Dombeck concluded that plaintiff was self-employed and engaged in substantial gainful activity throughout the period at issue, and for fifteen years thereafter, in that plaintiff continued to operate his farm beginning in 1972, despite the undisputed fact that the farm reported no income after 1982. I disagree. While the ALJ speculated that the farm must have generated "substantial income," because there would have been no other reason to continue operating the farm, there is no record evidence of any such income. (Tr. 751M). In fact, plaintiff's ex-wife and son, who were responsible for maintaining the farm's financial records, testified that plaintiff was a poor businessman, and that the farm consistently made little profit, or else lost money. (Tr. 876, 888, 927). *See* 20 CFR §404.1575(a)(2)(i) (in order to determine whether a plaintiff has engaged in substantial gainful activity, ALJ must examine: (1) whether the claimant rendered significant services to the business; and (2) whether the claimant received a "substantial income from the business"). In addition to engaging in improper and unsupported speculation, the ALJ also failed to calculate a net income figure as directed by the applicable regulations in making his conclusions relative to "substantial income." *See* 29 CFR §404.1575(c)(1) (net income figure, calculated using deductions specified in the regulations, is the figure to be used in determining whether a claimant has engaged in substantial gainful activity). As such, the ALJ's finding that plaintiff engaged in substantial gainful activity was based upon an improper legal standard, and is not supported by substantial evidence. Because the plaintiff's farm showed no profits for the relevant years, the ALJ should have applied 20 CFR §404.1574(b)(3)(i), and presumed that the plaintiff was not making a substantial income, and therefore was not engaged in substantial gainful activity.

B.      **Determination of Plaintiff's RFC**

In his decision dated September 23, 2004, ALJ Costello found that plaintiff could perform low-stress sedentary work with occasional public contact. (Tr. 591-605). This decision was vacated, and upon remand, the ALJ was ordered, *inter alia*, to evaluate all treating and examining physicians'

opinions with the level of deference specified by the Commissioner's regulations,[5] re-evaluate plaintiff's RFC in general, and provide a supporting narrative identifying the evidence relied upon and reconciling any conflicting medical evidence. (Tr. 629, 783). ALJ Costello's decision dated September 23, 2004 was reversed and remanded because he failed to correct errors identified on remand, citing some RFC reports and not others, and making no effort to explain the lack of deference afforded to some portions of plaintiff's treating physicians' reports, or to reconcile conflicting medical evidence, including the RFC report from plaintiff's treating physician relative to the substantial limitations on his ability to perform sedentary work, including limitations on reaching, pushing, pulling, sitting and standing. (Tr. 262-263, 591-605).

After the matter was remanded and the Appeals Council issued certain directives, ALJ Dombeck's decision, now before this Court, must be reversed because he failed to comply with the directives of the Appeals Council and deal with the deficiencies identified there. He also seemed to adopt ALJ Costello's RFC findings which had previously been determined to be defective.

**C.     Plaintiff's Ability to Perform Past Relevant Work as a Farm Manager**

ALJ Dombeck's finding that plaintiff retained the RFC to perform the job of "farm manager" is based solely on Judge Costello's decision, which ALJ Dombeck incorporates by reference. (Tr. 751M). ALJ Costello's decision, however, was vacated by the Appeals Council by order dated February 28, 2003 (Tr. 626), on grounds which included the fact that the RFC upon which ALJ Costello based his conclusions failed to account for plaintiff's obesity, did not give proper weight to the opinion of plaintiff's treating physicians and examining psychiatrist (Tr. 627-628), failed to

---

[5] A treating physician's opinion is entitled to controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). If an ALJ opts not to afford controlling weight to the opinion of a treating physician, the ALJ must consider: (1) the examining relationship; (2) the extent of the treatment relationship; (3) medical support for the opinion: (4) consistency; and (5) the physician's specialization, along with any other relevant factors. 29 C.F.R. §404.1527(d)(2). Failure to apply these factors and provide reasons for the weight given to the treating physician's report is reversible error. *See Snell v. Apfel*, 177 F.3d 128,1 34 (2d Cir. 1999); *Schall v. Apfel*, 134 F.3d 496 (2d Cir. 1998).

describe how the evidence supported the ALJ's conclusions, and appeared to identify positions that plaintiff could not have performed, even with the RFC that ALJ Costello had described. (Tr. 628). As such, ALJ Dombeck's reliance upon ALJ Costello's conclusions, without any attempt to satisfy the instructions given by the Appeals Council in reversing ALJ Costello's determination, including gathering supplemental evidence from a vocational expert concerning the RFC required to perform a farm manager position, was erroneous as a matter of law.

Moreover, ALJ Dombeck's determination that plaintiff could return to his prior relevant work as a farm manager is unsupported by any evidence in the record, and notably conflicts with the sole piece of record evidence on the issue. At ALJ Dombeck's initial supplemental hearing, after hearing testimony concerning plaintiff's activities on the family farm, vocational expert Andrews testified that all of plaintiff's past relevant work had been performed at more than a sedentary level, and that plaintiff was incapable of returning to it. (Tr. 900-901).

**C.     The Commissioner's Burden to Prove That Plaintiff Can Perform Other Work**

Furthermore, even if ALJ Dombeck had correctly determined plaintiff's RFC, the Commissioner has failed to demonstrate that plaintiff could have performed other work.

At step five of the disability determination, the Commissioner has the burden of proving that there were other jobs that plaintiff could perform, in light of her age, education, work experience, and ability to perform less than the full range of sedentary work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002). Here, the Commissioner has failed to demonstrate that plaintiff could have performed any other jobs, including those identified by ALJs Costello and Dombeck: general assembler, patcher, table worker, addresser and cutter/paster.

**1.     General Assembler, Patcher, and Table Worker Positions**

ALJ Dombeck's determination that plaintiff could perform the positions of general assembler, patcher and table worker was also a rubber-stamping of the same finding that ALJ Costello made in his subsequently-vacated March 19, 2002 decision. (Tr. 292-305). Once again, ALJ Dombeck's decision, which failed to rectify the deficiencies identified by the Appeals Council

describe how the evidence supported the ALJ's conclusions, and appeared to identify positions that plaintiff could not have performed, even with the RFC that ALJ Costello had described. (Tr. 628). As such, ALJ Dombeck's reliance upon ALJ Costello's conclusions, without any attempt to satisfy the instructions given by the Appeals Council in reversing ALJ Costello's determination, including gathering supplemental evidence from a vocational expert concerning the RFC required to perform a farm manager position, was erroneous as a matter of law.

Moreover, ALJ Dombeck's determination that plaintiff could return to his prior relevant work as a farm manager is unsupported by any evidence in the record, and notably conflicts with the sole piece of record evidence on the issue. At ALJ Dombeck's initial supplemental hearing, after hearing testimony concerning plaintiff's activities on the family farm, vocational expert Andrews testified that all of plaintiff's past relevant work had been performed at more than a sedentary level, and that plaintiff was incapable of returning to it. (Tr. 900-901).

**C.     The Commissioner's Burden to Prove That Plaintiff Can Perform Other Work**

Furthermore, even if ALJ Dombeck had correctly determined plaintiff's RFC, the Commissioner has failed to demonstrate that plaintiff could have performed other work.

At step five of the disability determination, the Commissioner has the burden of proving that there were other jobs that plaintiff could perform, in light of her age, education, work experience, and ability to perform less than the full range of sedentary work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002). Here, the Commissioner has failed to demonstrate that plaintiff could have performed any other jobs, including those identified by ALJs Costello and Dombeck: general assembler, patcher, table worker, addresser and cutter/paster.

**1.     General Assembler, Patcher, and Table Worker Positions**

ALJ Dombeck's determination that plaintiff could perform the positions of general assembler, patcher and table worker was also a rubber-stamping of the same finding that ALJ Costello made in his subsequently-vacated March 19, 2002 decision. (Tr. 292-305). Once again, ALJ Dombeck's decision, which failed to rectify the deficiencies identified by the Appeals Council

describe how the evidence supported the ALJ's conclusions, and appeared to identify positions that plaintiff could not have performed, even with the RFC that ALJ Costello had described. (Tr. 628). As such, ALJ Dombeck's reliance upon ALJ Costello's conclusions, without any attempt to satisfy the instructions given by the Appeals Council in reversing ALJ Costello's determination, including gathering supplemental evidence from a vocational expert concerning the RFC required to perform a farm manager position, was erroneous as a matter of law.

Moreover, ALJ Dombeck's determination that plaintiff could return to his prior relevant work as a farm manager is unsupported by any evidence in the record, and notably conflicts with the sole piece of record evidence on the issue. At ALJ Dombeck's initial supplemental hearing, after hearing testimony concerning plaintiff's activities on the family farm, vocational expert Andrews testified that all of plaintiff's past relevant work had been performed at more than a sedentary level, and that plaintiff was incapable of returning to it. (Tr. 900-901).

**C.     The Commissioner's Burden to Prove That Plaintiff Can Perform Other Work**

Furthermore, even if ALJ Dombeck had correctly determined plaintiff's RFC, the Commissioner has failed to demonstrate that plaintiff could have performed other work.

At step five of the disability determination, the Commissioner has the burden of proving that there were other jobs that plaintiff could perform, in light of her age, education, work experience, and ability to perform less than the full range of sedentary work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002). Here, the Commissioner has failed to demonstrate that plaintiff could have performed any other jobs, including those identified by ALJs Costello and Dombeck: general assembler, patcher, table worker, addresser and cutter/paster.

**1.     General Assembler, Patcher, and Table Worker Positions**

ALJ Dombeck's determination that plaintiff could perform the positions of general assembler, patcher and table worker was also a rubber-stamping of the same finding that ALJ Costello made in his subsequently-vacated March 19, 2002 decision. (Tr. 292-305). Once again, ALJ Dombeck's decision, which failed to rectify the deficiencies identified by the Appeals Council

in ALJ Costello's decision, including but not limited to gathering evidence from a vocational expert concerning the physical and mental requirements of the general assembler, patcher and table worker positions, was erroneous as a matter of law, and was insufficient to satisfy the Commissioner's burden to demonstrate that there were any other positions in the economy that plaintiff could perform.

### 2.     Order Clerk, Addresser and Cutter/Paster Positions

ALJ Costello's September 23, 2004 decision identified order clerk, addresser and cutter/paster as suitable positions for plaintiff. (Tr. 591-605). In vacating and remanding that decision, and the Appeals Council found that ALJ Costello had failed to provide a proper hypothetical to the vocational expert, and that the order clerk position conflicted with the limitations contained in the hypothetical that he did provide. (Tr. 783). Upon remand, the ALJ was ordered, *inter alia*, to obtain supplemental vocational expert testimony, and to identify and resolve any conflicts between the occupational evidence and Selected Characteristics of Occupations, a companion to the Department of Labor's Dictionary of Occupational Titles. *Id*.

To that end, ALJ Dombeck held two supplemental hearings, first hearing testimony from vocation al expert Andrews. However, instead of presenting a new or clarified hypothetical, ALJ Dombeck merely asked Andrews whether there were any jobs that the plaintiff could perform "that would fit within the limits of the RFC the way it is written," to which Andrews replied, "The RFC, your Honor, is a little vague for me," and could not identify any jobs available in the early 1980's using the RFC that Costello provided (Tr. 896). At the second hearing, vocational expert Manzi testified, again without the introduction of a new hypothetical. (Tr. 935-945).

ALJ Dombeck's failure to correct the deficiencies identified in ALJ Costello's prior decisions, while inexplicable, is not surprising in that ALJ Dombeck expressly rejected the Appeals Council's order in his decision, on the grounds that "the Appeals Council Order . . . commenting that vocational expert testimony 'seemingly' did not support the [plaintiff's] ability to perform one of the

jobs cited . . . is pure speculation beyond the scope of the Appeals Council's authority and not supported." (Tr. 751K).

The ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand. *See Lee v. Barnhart*, 2006 U.S. Dist. LEXIS 84810 at *28 (W.D.N.Y. 2006) ("[t]he Commissioner's own regulations specifically direct that, 'the Administrative Law Judge shall take any action that is ordered by the Appeals Council and may take additional action not inconsistent with the Appeals Council remand order.'"), *citing* 20 C.F.R. §404.977(b). *See also Mann v. Chater*, 1997 U.S. Dist. LEXIS 9252 at *4, *6 (S.D.N.Y. 1997) (case must be remanded where ALJ failed to follow instructions from the Appeals Council). Moreover, because ALJ Dombeck's determination suffers from the same inadequacies as ALJ Costello's earlier determination, it is insufficient to establish plaintiff's ability to perform any of the identified positions.

## CONCLUSION

Based on the foregoing, the Commissioner's decision cannot stand. The Commissioner has repeatedly ignored instructions from the Appeals Council and this Court to explain how the RFC and other findings made first by ALJ Costello and later adopted by ALJ Dombeck are supported by substantial evidence, or to demonstrate, using appropriate hypotheticals, that plaintiff could have performed any work that exists in the economy during the relevant period.

"'Where there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" courts generally remand cases to the Commissioner for the purpose of further developing the evidence. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996)(quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)).[6]

---

[6] As noted above, the Commissioner's legal errors occur at multiple steps of the analysis. Were the Commissioner's failures limited solely to its failure to satisfy the step five burden, no purpose would be served by a remand for further proceedings. *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000).

The need to do so in this case will regrettably postpone this matter, compelling the representatives of the plaintiff, now seven years deceased, to press his claim for the fifth time in more than a decade. The Court does not lightly overlook the fact that multiple ALJs have failed – in the most recent case, explicitly and willfully – to apply the applicable regulations and the instructions of this Court and the Appeals Council on remand – not once, but *four times over the course of twelve years*. Were the Court empowered to find the plaintiff disabled merely as a sanction for the Department's parade of mistakes in this case, it would do so without delay. "However, sympathetic though the Court is to the [p]laintiff's position, the Second Circuit has repeatedly held that it is more appropriate to remand for further development of the record . . . where the ALJ applied an improper legal standard," even in the face of inexcusable delay by the Commissioner. *See also Bush v. Shalala*, 94 F.3d 40 , 46 (2d Cir. 1996) (reversing the district court's remand for calculation and payment of benefits on the grounds that the district court was "outraged" by the Commissioner's delay, and holding that "absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits.")

Thus, the Court remands the case once again to the Commissioner for a thorough and appropriate evaluation of the evidence, but instructs that it be considered on an expedited basis, before an ALJ not previously involved in the case.

Plaintiff's cross motion for summary judgment (Dkt. #8) is granted in part, the Commissioner's motion for summary judgment (Dkt. #5) is denied, and the matter is remanded for further proceedings consistent with this Order and the May 4, 2006 Order of the Appeals Council, including but not limited to a reevaluation of plaintiff's RFC which affords controlling weight to the opinions of plaintiff's treating physicians. (Tr. 782-784).

Given the unreasonably lengthy pendency of this matter and the unusual breadth and repetition of the proceedings that have already taken place, the Commissioner is instructed to complete all proceedings and issue a final determination an expedited basis, within ninety (90) days

of the date of this order. The case is reversed and remanded for a new Administrative Hearing before an Administrative Law Judge who has not been previously involved in the case.

    IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 8, 2009.